**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Jerry Services, Inc. and Jerry Insurance Agency, LLC<br><br>            Plaintiffs,<br>v.<br><br>Insurify, Inc.; Compare.com Insurance Agency LLC; and DOES 1-10<br><br>            Defendants. | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs Jerry Services, Inc. and Jerry Insurance Agency, LLC ("Jerry" or "Plaintiffs"), by and through the undersigned counsel, hereby allege the following against Defendants Insurify, Inc. ("Insurify"); Compare.com Insurance Agency, LLC ("Compare.com") and DOES 1-10 (collectively with Insurify and Compare.com, "Defendants").

**NATURE OF THE ACTION**

1.      This case concerns Defendants' unlawful use of Jerry's federally registered and common law trademarks. Since its inception in 2017, Jerry redefined and radically improved key aspects of car ownership, starting with insurance. For many years, Jerry has succeeded by meeting its customers' needs by providing convenience, transparency and choices.

2.      Jerry helps people make confident decisions about their car and home, starting with their insurance needs. Through its app, Jerry provides customers with the ability to handle their needs in one place, without making a single phone call. In other words, it provides customers with better, more affordable, faster service.

-1-

3. In 2019, when Jerry launched its car insurance compare-and-buy service, it forever changed the experience of shopping for car insurance. Today, with more than 5 million users nationwide, Jerry is the #1 rated and most downloaded app in its category.

4. Over the years, Jerry has invested a considerable amount of time, resources, and money into developing and promoting its brands within the insurance brokerage industry.

5. Jerry has become aware of Defendants' use of the Jerry Marks in Defendants' online advertising, including on Google, Bing, and Yahoo!. Defendants' advertising redirects consumers searching for Jerry's brands to Defendants' websites. Jerry has also become aware that Defendants have been using the Jerry Marks as AdWords and/or keywords for the suspected advertisements.

6. This action seeks remedy for trademark infringement under the federal Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin under the federal Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under Massachusetts common law; and Unfair and Deceptive Acts and Practices Pursuant to Mass. Gen. L. Ch. 93A, §§2, 11.

## PARTIES

7. Jerry Services, Inc. is a Delaware corporation with its principal place of business at 430 Sherman Avenue, Suite 305, Palo Alto, CA 94306.

8. Jerry Insurance Agency, LLC is a Delaware limited liability company with its principal place of business at 430 Sherman Avenue, Suite 305, Palo Alto, CA 94306.

9. On information and belief, Insurify is a Delaware company with its principal place of business at 10 Canal Park, 5th Floor, Cambridge, MA 02141, and, according to Insurify's website (https://insurify.com/company/contact/), is headquartered at 201 Broadway, 6th Floor, Cambridge, MA 02139.

10.    On information and belief, Compare.com is a wholly-owned subsidiary of Insurify. *See* https://insurify.com/press/news/insurify-to-acquire-compare-com/. On information and belief Compare.com is a Delaware limited liability company registered to do business in Massachusetts, with CT Corporation System as its registered agent for service at 155 Federal Street, Suite 700, Boston, MA 02141.

11.    On information and belief, Plaintiffs do not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants were in some manner legally responsible for the damages suffered by Plaintiffs. Plaintiffs will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained together with appropriate charging allegations, as may be necessary.

<u>**JURISDICTION AND VENUE**</u>

12.    This Court has personal jurisdiction over Insurify because, on information and belief:  (i) Insurify does business and/or actively solicits business throughout the United States, including in Massachusetts; (ii) Insurify has continuous and ongoing business contacts with residents of Massachusetts; (iii) Insurify has intentionally engaged in acts targeted at Massachusetts that have caused harm within Massachusetts; and (iv) Insurify has purposely availed itself of the privileges of conducting business in Massachusetts. Among other things, and as set forth above, Insurify maintains its principal place of business in this district, in Cambridge, Massachusetts. In addition, Insurify is registered to do business in Massachusetts and maintains its headquarters in Massachusetts and this district at 201 Broadway, 6th Floor, Cambridge, MA 02139.

13.     This Court has personal jurisdiction over Compare.com because, on information and belief:  (i) Compare.com does business and/or actively solicits business throughout the United States, including in Massachusetts; (ii) Compare.com has continuous and ongoing business contacts with residents of Massachusetts; (iii) Compare.com has intentionally engaged in acts targeted at Massachusetts that have caused harm within Massachusetts; and (iv) Compare.com has purposely availed itself of the privileges of conducting business in Massachusetts. Among other things, and as set forth above, Compare.com is registered to do business in Massachusetts and maintains a registered agent for service at 155 Federal Street, Suite 700, Boston, MA 02141.

14.     This Court has subject matter jurisdiction over the claims asserted in this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) as part of this action is based on the federal Lanham Act. This Court has supplemental jurisdiction over Plaintiffs' Massachusetts statutory and common law claims pursuant to 28 U.S.C. § 1367(a) in that those claims arise out of a common nucleus of operative facts as the Lanham Act claims, and the Court's exercise of jurisdiction over the state law claims will promote judicial economy, convenience, and fairness to the parties.

15.     Venue is proper in this judicial district with respect to Insurify pursuant to 28 U.S.C. §§ 1391(b) and (c) in that, on information and belief, Insurify conducts business in this district, including by maintaining its headquarters in this district, offering its services in this district, and/or a substantial part of the acts or omissions giving rise to the claims asserted herein occurred and/or had effects in this district.

16.     Venue is proper in this judicial district with respect to Compare.com pursuant to 28 U.S.C. §§ 1391(b) and (c) in that, on information and belief, Compare.com conducts business in this district, including by offering its services in this district, and/or a substantial part of the acts or omissions giving rise to the claims asserted herein occurred and/or had effects in this district.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Plaintiffs' Business History and Valuable Intellectual Property**

17.    Since its founding in 2017 and the launch of its app in 2019, Jerry has provided customers with better, more affordable, faster service. Through its app, Jerry provides customers with the ability to handle their needs, without making a single phone call. For example, Jerry's product features: (1) PriceProtect, which finds insurance rates by partnering with 50+ insurance companies; (2) GarageGuard, which keeps track of a vehicle's record, helps diagnose issues, and sends scheduled maintenance reminders, repair and maintenance estimates; and (3) DriveShield, which tracks driving score and improves driving habits.

18.    Today, with more than 5 million users nationwide, Jerry is the #1 rated and most downloaded app in its category.

19.    Jerry offers its services in all 50 states and Washington D.C.

20.    Jerry markets its insurance services through its websites at www.Jerry.ai and www.getjerry.com, through app stores, as well as their social media and other marketing channels, including but not limited to its Facebook at https://www.facebook.com/thejerryapp; Instagram at https://www.instagram.com/thejerryapp;                    Linkedin                    at https://www.linkedin.com/company/jerryinc/; Reddit at https://www.reddit.com/r/jerryinsurance; TikTok          at          https://www.tiktok.com/@thejerryapp;          YouTube          at https://www.youtube.com/channel/UC-8FJDUziTbWqZaDZmtah5Q;          and          X          at https://x.com/thejerryapp.

21.    Jerry is the exclusive owner of the U.S. Trademark Registration No. 7,164,874 for "JERRY" in connection with "downloadable personal finance mobile applications for retrieving and displaying online, automated, and real-time quotes using artificial intelligence technology for

personal finance products, namely, car insurance" in class 9; and "providing on-line non-downloadable personal finance software for retrieving and displaying online, automated, and real-time quotes using artificial intelligence technology for personal finance products, namely, car insurance" in class 42 (the "Registered Mark").

22.     The registration for the Registered Mark constitutes prima facie evidence that the mark is valid and that Jerry is entitled to the exclusive use of the Registered Mark in commerce throughout the United States in connection with the services listed on the registrations.

23.     Jerry also owns the common law rights associated with the Registered Mark, as well as the common law rights to GETJERRY, JERRY.AI, JERRY, JERRY AI, JERRY CAR LOAN, JERRY INSURANCE, JERRY CAR INSURANCE, DRIVESHIELD, ALLCAR, GARAGEGUARD and PRICEPROTECT trademarks (the "Common Law Marks," collectively with the Registered Mark, the "Jerry Marks").

24.     For almost a decade, and long before the acts of Insurify complained of herein, Jerry has used the Registered Mark—and certain Common Law Marks for more than seven years—in advertising for its services, in promotional materials and in social media.

25.     Over the years, Jerry has invested a considerable amount of time, resources, and money into acquiring, developing, and promoting its Jerry Marks within the insurance industry.

26.     As a result of Jerry's considerable investment in acquiring, advertising, and promoting its insurance brokerage services under its Jerry Marks, the Jerry Marks have attained a high degree of recognition within the industry and represent a significant business asset with considerable goodwill and value to their clients. Accordingly, the Jerry Marks are a significant asset of Jerry's business.

27.    By virtue of Jerry's use of the Jerry Marks and the sums spent to promote the Jerry Marks, the Jerry Marks have acquired secondary meaning in the minds of the relevant public. Accordingly, the relevant public has come to associate the Jerry Marks with the insurance brokerage services that originate from Jerry.

**B.    Defendants' Business and Unlawful Conduct**

**1.    Insurify**

28.    Insurify offers competing, and/or at minimum, related insurance shopping services. Insurify is a digital insurance lead generator and/or agent that provides estimated quotes from insurance carriers.

29.    Through Insurify's website, located at insurify.com, consumers can compare estimated car insurance quotes for its partners after entering their personal and vehicle or real estate data.  As an example, upon arriving at insurify.com, consumers are prompted to enter a zip code in order to "compare" car, bundle, home, renters or pet insurance, as shown by the excerpt below.



30.     Consumers also have an option to call (888) 866-0849 to be connected directly to an agent for quotes or to create a profile and "sign in."

31.     Once consumers enter a zip code, they will be redirected to a questionnaire prompting them to provide information related to their personal details, vehicle type, and insurance status and needs. *See* the example question below.



32.     Towards the end of the questionnaire, consumers will be asked to enter their first and last name, as well as address, email and phone number. After entering this information, consumers will receive insurance options per price tier. Upon selection, consumers are redirected to a page with the "top quotes," where they are presented with a list of insurance companies. Some of the listings include quotes, while others—once a company is selected to "view"—redirect consumers to Insurify's partners' websites for further input of information. Jerry is not an option. *See* excerpt below.



33.     Upon information and belief, Insurify places bids through Google AdWords' Pay Per Click (PPC) program—or similar programs on Bing and Yahoo!—wherein the Jerry Marks are referenced in search terms, including at least "GETJERRY," "JERRY," "JERRY AI," "JERRY INSURANCE," and "ALLCAR." Insurify also uses Jerry's company name "JERRY SERVICES INC" and "JERRY COMPANY" in a similar manner, as well as confusingly similar terms such as "JERRI," "JJERRY," "JERRYS," "JERRY'S," and "HJERRY." As such, Insurify is specifically targeting customers searching for Jerry or the Jerry Marks by bidding on search terms that will capture web users searching for Jerry.

34.     On information and belief, Insurify advertises and markets its competing services under the identical infringing marks or confusingly similar variations thereof through a variety of marketing channels that overlap with Jerry's marketing channels, including via the Internet.

35.     Insurify also advertises its services through its social media, e.g., Facebook at www.facebook.com/insurify; Instagram at www.instagram.com/insurifyco, LinkedIn at www.linkedin.com/company/insurify; and X at x.com/insurify.

36.     As detailed below, Insurify has willfully designed the ads that are generated and shown to consumers following their search for the Jerry Marks or confusingly similar variations thereof to deceive consumers into the mistaken belief that by clicking through the online advertisement, they are communicating with Jerry, when in fact, they are not. On information and belief, Insurify intentionally seeks to mislead consumers by presenting advertisements which Insurify knows the consumers will believe to be advertisements sponsored by or associated with Jerry. Insurify does this to misdirect consumers and divert revenue that should flow through to Jerry and not to Insurify.

37.     Insurify purchases the Jerry Marks or confusingly similar variations thereof on multiple ad platforms. Jerry believes that it has been deprived of significant revenue from consumers who have searched for Jerry or the Jerry Marks but have instead been misled by Insurify's ads into purchasing insurance through entities that the consumers believed to be associated with Jerry.

38.     To clarify, Jerry's complaints here are not simply that Insurify bids on the Jerry Marks as search terms through Google AdWords, Bing, Yahoo! and other search engines, but rather, that Insurify bids on such trademarks as search terms as part of a larger, more comprehensive scheme to then present to those consumers (who are lured by Insurify's

advertisement use of the Jerry Marks) additional deceptive links and advertisements that cause the consumers to further believe they are conducting business with Jerry.

39.     Through the foregoing scheme, Insurify creates a consumer experience in which consumers are falsely led to believe that they are conducting business with someone other than Insurify—in this case, Jerry. Insurify's clear intent is to pass off Insurify's services as Jerry's services. Insurify does this knowingly and with an intent to trade off Jerry's goodwill by deceiving consumers through such scheme.

40.     On further information and belief, Insurify sells insurance leads generated from the deceptive acts to third-party insurance companies and agents or uses the same to misdirect consumers to buy insurance services from its own website.

41.     Starting at least as early as 2021, Jerry became aware of Insurify's use of the Jerry Marks in Insurify's online advertising, including on Google, Bing, and Yahoo!, to misdirect consumers to Insurify's website. Jerry also became aware that Insurify had been using the Jerry Marks or confusingly similar variations thereof as AdWords and/or keywords for the suspected advertisements. For example, as shown below.





42.     To make matters worse, Insurify was not only using the Jerry Marks in its infringing advertising but is also using the Jerry Marks without Jerry's authorization or consent on Insurify's own website and URL in a manner that directly competes with Jerry. As of April 10, 2026 this page is still up. *See* excerpt below.



43.    Upon learning of Insurify's unauthorized infringing uses of the Jerry Marks, Jerry promptly sent a cease-and-desist letter to Insurify on June 23, 2021. In the letter, Jerry demanded that Insurify stop its infringing use of the Jerry Marks. On July 19, 2021, Insurify responded by claiming that "there is no trademark issue with bidding on competitor search terms on Google and other search engines and this is common practice every day." Insurify also falsely claimed that the text of its advertising had no mention of "Jerry" so there was no likelihood of consumer confusion.

44.    On October 29, 2021, Jerry sent Insurify a second cease-and-desist letter. Although Insurify never responded to this letter nor agreed to stop its infringing conduct, it initially seemed to cooperate and take corrective action, with the incidents of infringement initially seeming to decline.

45.    Nevertheless, Jerry started to see new instances of infringement in 2024. Immediately upon discovery, on July 8, 2024, Jerry sent a third cease-and-desist letter to Insurify. Jerry once again put Insurify on notice of its unauthorized use of the Jerry Marks. Jerry also warned Insurify about using confusingly similar variations of the Jerry Marks, e.g., "JERRI." Insurify did not respond to this letter but seemed to temporarily cease its infringing use of the Jerry Marks.

46.    In November 2024, Jerry noticed new instances of infringement of the Jerry Marks by Insurify. To try to remedy the issue, Jerry began systematically filing trademark infringement complaints with Google and Microsoft related to this infringing use. As a result, the infringing ads were removed. However, new ones quickly appeared.

47.    By August 2025, Insurify had once again resumed its unauthorized use of the Jerry Marks. By way of non-limiting example, at the end of 2025, Jerry identified the following infringing Insurify advertisements, all of which misleadingly direct consumers to Insurify's website:



Case 1:26-cv-11824-MJJ    Document 1    Filed 04/20/26    Page 17 of 38



48.     Moreover, Jerry recently discovered that Insurify is not only using the Jerry Marks in its infringing advertising, but also copying the look and feel of Jerry's ads in a manner that directly competes with Jerry:







Created on July 28, 2025

Started running on January 28, 2026







49.    Insurify has not been granted consent or authority to assert or imply an association, affiliation or sponsorship of Insurify's services by Jerry.

50.     Insurify is not authorized by Jerry to use the Jerry Marks or any confusingly similar variations thereof, and such use is likely to cause consumer confusion.

51.     Insurify, by its unauthorized use of the Jerry Marks or confusingly similar variations thereof in connection with competing and/or related services, has engaged in trademark infringement, false designation of origin and unfair competition.

52.     Insurify's activities have damaged and will continue to damage the reputation, business and goodwill of Jerry. Unless enjoined by the Court, Insurify will continue and further escalate its unlawful activities.

53.     Jerry has no adequate remedy at law and Insurify's activities have caused and, if not enjoined, will continue to cause irreparable harm to Jerry including its business reputation and goodwill.

### 2.     Compare.com

54.     Like Insurify, Compare.com offers competing, and/or at minimum, related insurance services. Compare.com "is a comparison platform that helps users compare personalized quotes for multiple insurance products, including auto, home, renters, and more." https://www.compare.com/about-us.

55.     Compare.com's website provides estimated quotes from insurance carriers, and the ability for shoppers to purchase those insurance policies online or click-out to visit partner websites that compensate Compare.com for that traffic. As an example, upon arriving at this site, consumers are prompted to enter their zip codes in order to "see my quotes" for car, bundle, home, or pet insurance, as shown by the excerpt below.



56.     Consumers also have the option to call (855) 205-2412 to be connected directly to an agent for quotes or to create a profile and "sign in."

57.     Once consumers enter their zip codes, they are redirected to a questionnaire prompting them to provide information related to personal information, car type, and insurance status and needs. *See* exemplary question below.



58.     Towards the end of the questionnaire, consumers are asked to enter their first and last name, as well as address, email and phone number. After entering this information, consumers receive options per price tier. Upon selection, consumers are redirected to a page with the "top quotes," where they are presented with a list of insurance companies. Some of the listings include quotes, while others—once a company is selected to "view"—redirect consumers to Compare.com's partners' websites for further input of information. *See* excerpt below.



59.     Upon information and belief, Compare.com places bids through Google AdWords' PPC program—or similar programs on Bing and Yahoo!—wherein the Jerry Marks are referenced in search terms, including at least "GET JERRY," "JERRY," "JERRY AI," and "JERRY INSURANCE," as well as confusingly similar terms such as "GETJERRYS." As such, Compare.com is specifically targeting customers searching for Jerry or the Jerry Marks by bidding on search terms that will capture web users searching for Jerry.

60.     On information and belief, Compare.com advertises and markets its competing services under the identical infringing marks or confusingly similar variations thereof through a variety of marketing channels that overlap with Jerry's marketing channels, including via the Internet.

61.     Compare.com also advertises its services through its social media, e.g., Facebook at https://www.facebook.com/compare; X at https://x.com/compare_com; Instagram at https://www.instagram.com/compare_com;                LinkedIn                at

https://www.linkedin.com/company/comparenowcom;   and   YouTube   at https://www.youtube.com/compare.

62. As detailed below, Compare.com has willfully designed the ads that are generated, and shown to consumers following their search for the Jerry Marks or confusingly similar variations thereof, to deceive consumers into the mistaken belief that by clicking through the online advertisement, they are communicating with Jerry, when in fact, they are not. On information and belief, Compare.com intentionally seeks to mislead consumers by presenting advertisements which Compare.com knows the consumers will believe to be advertisements sponsored by or associated with Jerry. Compare.com does this to divert revenue that should flow through to Jerry and not to Compare.com.

63. Compare.com purchases Jerry Marks or confusingly similar variations thereof on multiple ad platforms. Jerry believes that it has been deprived of significant revenue from consumers who have searched for Jerry or the Jerry Marks and been misled by Compare.com's ads into purchasing insurance through entities that the consumers believed to be associated with Jerry.

64. To clarify, Jerry's complaints here are not simply that Compare.com bids on the Jerry Marks as search terms through Google AdWords, Bing, Yahoo! and other search engines, but rather, that Compare.com bids on such trademarks as search terms as part of a larger, more comprehensive scheme to then present to those consumers (who are lured by Compare.com's advertisement use of the Jerry Marks) additional deceptive links and advertisements that cause the consumers to further believe they are conducting business with Jerry.

65. Through the foregoing scheme, Compare.com creates a consumer experience in which consumers are falsely led to believe that they are conducting business with someone other

than Compare.com—in this case, Jerry. Compare.com's clear intent is to pass off Compare.com's services as Jerry's services. Compare.com does this knowingly and with an intent to trade off Jerry's goodwill by deceiving consumers through such scheme.

66.     Upon further information and belief, Compare.com sells insurance leads generated from the deceptive acts to third-party insurance companies and agents or uses the same to redirect consumers to buy insurance services from its own website.

67.     In or around August or September of 2025, Jerry discovered that Insurify's wholly-owned subsidiary Compare.com was also making unauthorized use of the Jerry Marks. *See* examples below.



Compare.com
https://www.compare.com ⋮

## Compare.com® Auto Insurance | Cheap Auto Insurance From $29

Sponsored Best Quotes this month, Aug 2025. Compare Now, Labor Day Quote. The Jerry App Today. Best Savings on Auto Insurance. Find Budget-Friendly Auto Coverage. 1 Days Until Labor Day.

Site visitors: Over 10K in the past month

"Very helpful for finding insurance of any ..." - from consumer review

Contact Us     Auto Insurance



Compare.com
https://www.compare.com ⋮

## Cheapest Auto Insurance | 2025 Auto Insurance

Sponsored Best Quotes this month, Aug 2025. Compare Now, Labor Day Quote. Jerry Ai Today. August 31, 2025. Don't sacrifice coverage for cost. Compare quotes on Compare for car insurance.

Site visitors: Over 10K in the past month

"Very helpful for finding insurance of any ..." - from consumer review





68.    Upon discovering this further unauthorized use of the Jerry Marks, Jerry sent Defendants a fourth cease-and-desist letter, this time related to Compare.com's unauthorized use. On September 25, 2025, Defendants responded that their advertising group had re-reviewed all paid search advertising to ensure there was no mention of any Jerry name or the Jerry Marks. Nevertheless, Defendants continued to use the Jerry Marks.

69.    In or around March of 2026, Jerry discovered the following infringing activities:



70.    That Defendants initially promised that they would cease the identified wrongful conduct only to breach that promise is proof of how profitable Defendants' wrongful conduct is and continues to be. Defendants evaluated the risk and repeatedly determined that it was more valuable to continue to infringe the Jerry Marks. This is a clear indication of just how willful Defendants' wrongful and infringing acts are and why there is a substantial need for significant monetary and injunctive relief to Jerry for Defendants' conduct.

71.    Like Insurify.com, Compare.com was not only using the Jerry Marks in its infringing advertising, but also using the Jerry Marks without Jerry's authorization or consent on Compare.com's own website and URL in a manner that directly competes with Jerry. As of April 9, 2026, this page is still up. *See* excerpt below.



72.    Compare.com has not been granted consent or authority to assert or imply an association or affiliation with, or sponsorship of Compare.com's services by Jerry.

73.    Compare.com is not authorized by Plaintiffs to use the Jerry Marks or any confusingly similar variations thereof, and such use is likely to cause consumer confusion.

74.    Compare.com, by its unauthorized use of the Jerry Marks or confusingly similar variations thereof in connection with competing and/or related services, has engaged in trademark infringement, false designation of origin and unfair competition.

75.    Compare.com's activities have damaged and will continue to damage the reputation, business and goodwill of Jerry. Unless enjoined by the Court, Compare.com will continue and further escalate its unlawful activities.

76.    Jerry has no adequate remedy at law and Compare.com's activities have caused and, if not enjoined, will continue to cause irreparable harm to Jerry including its business reputation and goodwill.

### Count I
### Trademark Infringement and Counterfeiting 15 U.S.C. § 1114

77.    Plaintiffs reallege and incorporate herein by this reference the allegations contained in all the prior paragraphs as though fully set forth herein.

78.    Plaintiffs own the Registered Mark, which is federally registered on the Principal Register of the United States Patent and Trademark Office. This registration serves as prima facie evidence that the Registered Mark is entitled to protection. The Registered Mark is strong and distinctive and designates Plaintiffs as the source of all services advertised, marketed, sold or provided in connection with the Registered Mark.

79.    Defendants have infringed the Registered Mark by way of their unauthorized use in commerce of the Registered Mark and/or confusingly similar variations thereof, and/or counterfeit, copies, or colorable imitations of the Registered Mark, despite repeated demands by Plaintiffs to cease such use, in connection with its advertising, marketing, and provision of insurance services is likely to cause confusion, to cause mistake, or to deceive consumers.

80.    Defendants were aware of the Registered Mark prior to their unauthorized and infringing use of the Registered Mark or confusingly similar terms in connection with related and/or competing services, including without limitation, by virtue of the fact that Plaintiffs notified Defendants of their unauthorized and infringing use on multiple occasions—through the cease-and-desist letters, as well as the complaints through the Google and Microsoft platforms. Thus, Defendants' unauthorized use of the Registered Mark was and is knowing, intentional and willful.

Defendants' use constitutes willful federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

81.     Due to Defendants' actions, Plaintiffs have suffered irreparable harm to their valuable trademarks and the goodwill associated therewith. Plaintiffs have been and, unless Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed. Plaintiffs have no adequate remedy at law and therefore seek injunctive relief under 15 U.S.C. §1116.

82.     As a direct and proximate result of the foregoing acts, practices, and conduct of Defendants, Plaintiffs have been substantially injured in their business resulting in lost revenues, lost profits, loss of goodwill, diminished reputation and other damages. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover damages they have sustained and will sustain as a direct result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct. At present, Plaintiffs are unable to ascertain the full extent of their damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

83.     As Defendants' acts were willful, Plaintiffs are also entitled to treble damages against Defendants pursuant to 15 U.S.C. § 1117(a).

84.     Defendants' willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and thus, Plaintiffs are entitled to an award of attorneys' fees and costs.

### Count II
### False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)

85.     Plaintiffs reallege and incorporate herein by this reference the allegations contained in all the prior paragraphs as though fully set forth herein.

86.    Upon information and belief, Defendants were aware of the Jerry Marks prior to using the Jerry Marks for their related and/or competing services. Thus, Defendants' unauthorized use of the Jerry Marks was and is knowing, intentional, and willful.

87.    Through their use of the Jerry Marks or confusingly similar variations thereof, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression that Plaintiffs somehow authorized, sponsored, approved, licensed or participated in Defendants' use of the Jerry Marks or confusingly similar variations thereof.

88.    Plaintiffs have not authorized, licensed or given permission to Defendants to use the Jerry Marks in any manner.

89.    Defendants' use of the Jerry Marks or confusingly similar variations thereof will likely cause confusion as to the origin and authenticity of Defendants' services and will likely cause others to believe that there is a relationship between Plaintiffs and Defendants.

90.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and will continue to be damaged.

91.    Defendants' actions thus constitute unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

92.    Due to Defendants' actions, Plaintiffs have suffered irreparable harm to their valuable Jerry Marks, and the goodwill associated therewith. Plaintiffs have been and, unless Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed. Plaintiffs have no adequate remedy at law and therefore seek injunctive relief under 15 U.S.C. §1116.

93.    As a direct and proximate result of the foregoing acts, practices, and conduct of Defendants, Plaintiffs have been substantially injured in their business resulting in lost revenues, lost profits, loss of goodwill, diminished reputation and other damages. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover damages they have sustained and will sustain as a direct result of Defendants' wrongful conduct, and the gains, profits and advantages that Defendants have obtained as a result of their wrongful conduct. At present, Plaintiffs are unable to ascertain the full extent of their damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct described herein.

94.    As Defendants' acts were willful, Plaintiffs are also entitled to treble damages against Defendants pursuant to 15 U.S.C. § 1117(a).

95.    Defendants' willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and thus, Plaintiffs are entitled to an award of attorneys' fees and costs.

<div align="center">

**Count III**
**Trademark Infringement and Unfair Competition under Massachusetts Common Law**

</div>

96.    Plaintiffs reallege and incorporate herein by this reference the allegations contained in all the prior paragraphs as though fully set forth herein.

97.    Plaintiffs are the senior users of the Jerry Marks and have extensive use of the same not only in Massachusetts, but nationwide.

98.    Defendants' unauthorized use in commerce of the Jerry Marks and/or confusingly similar variations thereof, despite repeated demands by Plaintiffs to cease such use, in connection with its advertising, marketing, and provision of insurance services is likely to cause confusion, to cause mistake, or to deceive consumers. Such unauthorized use constitutes infringement and unfair competition under the common law of the Commonwealth of Massachusetts.

99.      Defendants were aware of the Registered Mark prior to their unauthorized and infringing use of the Registered Mark or confusingly similar terms in connection with related and/or competing services, including without limitation, by virtue of the fact that Plaintiffs notified Defendants of their unauthorized and infringing use on multiple occasions—through the cease-and-desist letters, as well as the complaints through the Google and Microsoft platforms. Thus, Defendants' unauthorized use of the Jerry Marks was and is knowing, intentional and willful. Defendants' use constitutes willful trademark infringement in violation of Massachusetts common law.

100.     Due to Defendants' actions, Plaintiffs have suffered irreparable harm to their valuable trademarks and the goodwill associated therewith. Plaintiffs have been and, unless Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed. Plaintiffs have no adequate remedy at law.

### Count IV
### Massachusetts Unfair and Deceptive Trade Practices (Mass. Gen. L. Ch. 93A §§ 2, 11)

101.     Plaintiffs reallege and incorporate herein by this reference the allegations contained in all the prior paragraphs as though fully set forth herein.

102.     Plaintiffs and Defendants are engaged in the conduct of trade or commerce within the meaning of Mass. Gen. L. Ch. 93A.

103.     Defendants have committed unfair trade practices, including trademark infringement under common law and the Lanham Act. That is, Defendants' unauthorized use in commerce of the Jerry Marks and/or confusingly similar variations thereof, despite repeated demands by Plaintiffs to cease such use, in connection with its advertising, marketing, and provision of insurance services is likely to cause confusion, to cause mistake, or to deceive consumers. Defendants' conduct constitutes unfair and deceptive acts or practices in the course of

business, trade, or commerce occurring primarily and substantially in the Commonwealth of Massachusetts in violation of Mass. Gen. L. Ch. 93A §§ 2, 11.

104.    Defendants' acts of unfair competition are willful and are causing Plaintiffs to suffer irreparable harm, for which they have no adequate remedy at law. Unless and until Defendants are enjoined, Defendants will continue to compete unfairly against and cause irreparable harm to Plaintiffs.

105.    As a direct and proximate result of the foregoing deceptive acts and practices of Defendants, Plaintiffs are entitled to damages, treble damages, and recovery of their attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    That Defendants be held liable for federal trademark infringement, and unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a); trademark infringement under Massachusetts common law; and unfair competition in violation of the Deceptive Trade Practices (Mass. Gen. L. Ch. 93A §§ 2, 11).

B.    For preliminary and permanent injunctions enjoining Defendants, their agents, employees, representatives, partners, joint ventures, affiliates and/or anyone acting on behalf of, or in concert with Defendants from:

(1)    advertising, marketing or selling any products under the Jerry Marks, or any colorable imitation(s) of the Jerry Marks in connection with insurance or related services;

(2)    using in commerce or facilitating the use in commerce of the Jerry Marks or confusingly similar variations thereof, or any other phrase, term, mark, trade name, logo or design that falsely represents that, or is likely to confuse, mislead, or deceive purchasers, Plaintiffs'

customers or prospective customers, or members of the public to believe that services advertised, marketed, sold and/or offered for sale by Defendants originate from Plaintiffs, or that such services have been sponsored, approved, or licensed by or associated with Plaintiffs, or are in some way connected to or affiliated with Plaintiffs;

(3) doing or allowing any act or thing which is likely to injure Plaintiffs' business reputation or goodwill;

(4) engaging in any acts of federal, state or common law trademark infringement, false designation of origin, or unfair competition that would damage or injure Plaintiffs; and

(5) participating or assisting in any of the above activities.

C. That Defendants, pursuant to 15 U.S.C. § 1116(a), be required to file with the Court and to serve on Plaintiffs within thirty (30) days after service of an injunction order as requested herein, a report in writing under oath setting forth in detail the manner and form in which they have complied with the Court's order.

D. That an accounting be ordered of all of the profits realized by Defendants from their unauthorized use of the Jerry Marks or confusingly similar variations thereof.

E. That Defendants be required to account for and pay Plaintiffs all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein.

F. That all gains, profits and advantages derived by Defendants from their acts of infringement and other unlawful conduct alleged herein be deemed to be in constructive trust for the benefit of Plaintiffs.

G.    That judgment be entered against Defendants for Plaintiffs' actual damages as a result of Defendants' acts of infringement and other unlawful conduct alleged herein, and for any additional profits attributable to Defendants' wrongful conduct, according to proof.

H.    That Defendants' unlawful conduct as alleged herein be deemed a willful violation of Plaintiffs' intellectual property rights.

I.    That the Court declare this an exceptional case in light of Defendants' willful conduct.

J.    That Plaintiffs' actual damages be trebled.

K.    That Plaintiffs recover their reasonable attorneys' fees.

L.    That Plaintiffs recover the costs of this suit.

M.    That Plaintiffs be granted pre-judgment and post-judgment interest on the damages caused by Defendants.

N.    That Plaintiffs be granted such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this matter.

Dated:   April 20, 2026

<div style="margin-left:50%">

*/s/ David S. Godkin*

David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
Birnbaum & Godkin, LLP
1 Marina Park Drive, Suite 1410
Boston, MA 02210
617.307.6100
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

Jesse A. Salen
jsalen@sheppard.com
Ximena Solano Suarez
xsolanosuarez@sheppard.com
SHEPPARD, MULLIN, RICHTER &
HAMPTON llp
A Limited Liability Partnership
Including Professional Corporations
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
858.720.8900

*Attorneys for Plaintiffs*

</div>