**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Jerry Services, Inc. and Jerry Insurance Agency, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Insurify, Inc.; Compare.com Insurance Agency LLC; and DOES 1-10<br><br>Defendant. | Civil Action No. 26-11824-MJJ |

**MEMORANDUM OF DECISION**

November 2, 2026

JOUN, D.J.

Before me are Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), [Doc. No. 17], as supplemented following the filing of the First Amended Complaint ("FAC"), [Doc. No. 23], and Defendants' motion for a more definite statement and to strike portions of the FAC under Rules 12(e) and 12(f), [Doc. No. 24]. I consider the allegations in the operative FAC, [Doc. No. 21], rather than the superseded original complaint. For the reasons set forth below, the motion to dismiss is DENIED; the motion for a more definite statement is GRANTED in part as to the scope of Plaintiffs' claim involving ALLCAR and otherwise DENIED; and the motion to strike is DENIED.

## I. BACKGROUND

Plaintiffs Jerry Services, Inc. ("Jerry Services") and Jerry Insurance Agency, LLC ("Jerry Insurance Agency") commenced this action on April 20, 2026. [Doc. No. 1]. They allege that

Defendants Insurify, Inc. ("Insurify") and Compare.com Insurance Agency LLC ("Compare.com") use Plaintiffs' marks and confusingly similar terms in search-engine advertising, sponsored links, URLs, and associated online materials to divert consumers seeking Plaintiffs' insurance-related services. The FAC asserts registered-mark infringement under 15 U.S.C. § 1114 (Count I), false designation of origin and unfair competition under 15 U.S.C. § 1125(a) (Count II), Massachusetts common-law infringement and unfair competition (Count III), and unfair or deceptive practices under Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Count IV). [Doc. No. 21].

The FAC identifies Jerry Services as the owner of U.S. Registration No. 7,164,874 for JERRY and as the owner of common-law rights in GETJERRY, JERRY.AI, JERRY, JERRY AI, and JERRY INSURANCE (collectively, together with the registered mark, the "Jerry Marks"). [Id. ¶¶ 22–24]. It alleges that Jerry Insurance Agency, a wholly owned subsidiary, uses the registered and common-law marks with Jerry Services' authorization, license, or consent in providing insurance brokerage services. [*Id.* ¶¶ 4, 21, 25–30]. The FAC separately identifies DRIVESHIELD, ALLCAR, GARAGEGUARD, and PRICEPROTECT as marks in which Jerry Services claims common-law rights. [*Id.* ¶ 24].

Defendants initially moved to dismiss the original complaint. [Doc. Nos. 17–18]. Plaintiffs subsequently filed the FAC. [Doc. No. 21]. I allowed Defendants either to withdraw their pending motion and respond to the FAC or to supplement their motion. [Doc. No. 22]. Defendants elected to supplement, addressing the Chapter 93A geographic limitation in particular. [Doc. No. 23]. Although Plaintiffs contend that the supplemental filing displaced the earlier challenges, see [Doc. No. 28 at 1 n.1], Defendants did not formally withdraw their motion. I therefore consider the preserved arguments in the original memorandum to the extent

directed at deficiencies allegedly remaining in the operative FAC, as well as the supplemental Chapter 93A arguments. All challenges are assessed against the FAC, not the superseded complaint.

## II. MOTION TO DISMISS

### A. Legal Standards

A facial challenge to subject-matter jurisdiction under Rule 12(b)(1) requires the Court to accept well-pleaded allegations and draw reasonable inferences in Plaintiffs' favor while determining whether each plaintiff alleges an injury in fact fairly traceable to Defendants and likely redressable by a favorable decision. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730–31 (1st Cir. 2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). Where jurisdiction and merits are challenged together, the Court ordinarily considers jurisdiction first. *Ne. Erectors Ass'n v. Sec'y of Lab.*, 62 F.3d 37, 39 (1st Cir. 1995).

Under Rule 12(b)(6), the Court takes well-pleaded factual allegations as true and asks whether they plausibly state an entitlement to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The Court does not require proof of the alleged infringement or a quantified damages calculation at this stage, but it does not credit bare legal conclusions.

### B. Analysis

#### 1. Article III standing

Defendants' original motion identified two alleged defects: the complaint did not distinguish which entity owned or used which marks, and its assertions of damage were too conclusory to establish a particularized injury. [Doc. No. 18 at 8–10]. The FAC addresses the first concern materially, though it does not transform these related corporations into a single

plaintiff. Paragraphs 22–24 identify Jerry Services as owner of the federal registration and of the alleged common-law rights. Paragraphs 25–30 allege that Jerry Insurance Agency has used those marks in the actual provision of insurance brokerage services under Jerry Services' authorization. These allegations identify the different interests the two entities claim to protect. Common ownership alone would not establish standing for either; the allegations of each entity's own commercial activities are the salient facts.

For Jerry Services, the FAC describes ownership and promotion of the marks, the goodwill associated with them, and alleged economic and reputational harm. Paragraph 58 expressly attributes to Jerry Services lost sales and commissions, diminished return on marketing investment, and reputational injury from false associations. Those asserted harms are concrete commercial injuries, even without a precise damages calculation. They are plausibly traceable to the alleged appropriation of search traffic and potentially redressable by damages and prospective injunctive relief. Plaintiffs' admission that they cannot yet determine the full extent of gains or losses, FAC ¶ 110, does not negate an otherwise plausible allegation of injury.

Jerry Insurance Agency presents a closer question because the FAC more often attributes damages to "Jerry" collectively and names Jerry Services specifically in paragraph 58. But the FAC alleges that the agency itself operates the insurance brokerage business, uses the marks in its own services, and participates in transactions that Defendants allegedly divert. FAC ¶¶ 21, 25–30, 81, 127. Read with the express statement that collective "Jerry" allegations concern both companies, *id.* ¶ 21 n.1, the allegations support a reasonable inference that the agency claims its own lost brokerage opportunities or commissions from consumer diversion. I do not infer that the agency owns Jerry Services' registered mark; nor do I hold that a subsidiary has standing

solely because its parent may be injured. Rather, the claimed injury arises from the subsidiary's alleged market participation and use of the marks.

Defendants' reliance on *Ascend Capital, LLC v. Moolex, LLC*, No. 21-10972-FDS, 2023 WL 5153767 (D. Mass. Aug. 10, 2023), does not require a different result. The pertinent question is whether this FAC pleads a plausible effect on the commercial interests of the particular plaintiff, not whether every trademark allegation itself supplies injury in fact. Here, the pleaded diversion of prospective insurance customers and loss of associated revenue supplies a causal theory that was absent or inadequately alleged in the setting discussed in *Ascend Capital*. The allegation that customers may mistake Defendants' ads for Jerry-sponsored results also supplies an intelligible basis for claimed reputational harm. These allegations ultimately require proof, but they are more than an assertion of injury in the abstract.

I do not rely on the Lanham Act principle that liability for infringement need not always depend on proof of actual monetary loss to dispense with Article III's separate demands. Constitutional standing still requires a plaintiff-specific injury in fact, fairly traceable to challenged conduct, and likely redressable by judicial relief. Plaintiffs have plausibly alleged those elements here. Any separate statutory restriction on who may maintain a registered-mark infringement claim concerns the merits and is addressed below. Because the federal claims remain, Defendants' derivative request to dismiss state claims for want of supplemental jurisdiction also fails. The Rule 12(b)(1) motion is denied.

**2. <u>Counts I–III: ownership, use, and likelihood of confusion</u>**

Trademark infringement generally requires a legally protectable mark, unauthorized use by the defendant in commerce, and a likelihood of consumer confusion. *See Star Financial Services, Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996). The standards for the

federal common-law-mark claim and the analogous Massachusetts infringement and unfair-competition claim substantially overlap in their focus on the protection of source-identifying rights and likely confusion. Count I is narrower: it concerns the federally registered JERRY mark; Counts II and III invoke the defined Jerry Marks. I therefore do not assume that every product-feature mark mentioned in the narrative is an independently asserted infringement claim.

First, as to entitlement to assert trademark rights, the FAC alleges that Jerry Services owns the JERRY registration and the identified common-law marks; it also alleges continuous commercial use through an authorized subsidiary. FAC ¶¶ 22–30. A registration is presumptive evidence of validity, ownership, and the registrant's exclusive right to use the mark in commerce for the listed goods or services, subject to statutory limitations and defenses. 15 U.S.C. § 1057(b). Jerry Services' ownership allegations plausibly support its registered-mark claim. The Court does not hold that the agency separately owns the federal registration. Its allegations as an authorized user and licensed insurance intermediary support a claimed commercial stake, but whether it may obtain every form of relief under § 1114 in its own name remains distinct from the ownership question and may be revisited on a developed record and properly focused briefing. The present motion does not justify dismissal of the action in light of the registrant's clearly pleaded participation.

Second, the FAC alleges more than Defendants' unobservable bidding on keywords. It alleges the appearance of JERRY and related designations in visible sponsored advertisements, URLs, and web-page or search-result previews that allegedly suggest affiliation with Plaintiffs. FAC ¶¶ 40–58, 67–81. An advertising keyword alone is not automatically confusing, and I do not adopt a rule that purchasing a competitor's mark as a keyword necessarily infringes. The asserted claim instead depends on the allegedly misleading presentation of Defendants' own ads

and destinations, considered in context. These pleaded uses supply a plausible basis for the challenged commercial-use allegations.

Third, the complaint supplies a plausible, though contested, likelihood-of-confusion theory. The allegedly displayed JERRY designations overlap with the asserted mark; Defendants offer competing insurance-shopping services; customers encountering a sponsored search result might reasonably perceive a result bearing JERRY and resembling Jerry's own advertising as affiliated with that service. The FAC also alleges intentional diversion, which may be relevant to intent, although an allegation of bad faith alone does not establish likely confusion. Defendants remain free to contest the appearance of the ads, the prominence of their own names, the actual consumer experience, and the significance of each relevant confusion factor. These matters cannot be conclusively resolved merely by selecting inferences against the pleader.

The original motion particularly identifies several numbered marks for which it contends the complaint does not plausibly allege use or confusion. [Doc. No. 18 at 11–12]. The FAC's definition, however, draws an important boundary: JERRY, GETJERRY, JERRY.AI, JERRY AI, and JERRY INSURANCE comprise the asserted Jerry Marks; DRIVESHIELD, GARAGEGUARD, PRICEPROTECT, and ALLCAR are separately identified. FAC ¶ 24. The pleading gives concrete examples of variants of JERRY in advertisements and identifies a common theory of consumer diversion to competing insurance services. At this stage those allegations suffice for the JERRY-family theory asserted in Counts I–III; this ruling is not an adjudication that every separately mentioned product-feature mark has been infringed. The one material ambiguity concerning ALLCAR is addressed under Rule 12(e), rather than by deeming the FAC to have asserted and established a fully articulated claim regarding that mark.

I also do not treat the alleged imitation of the "look and feel" of digital ads as a standalone pleaded trade-dress count. It is presently relevant as alleged context for confusion and intent concerning the identified marks. Because the FAC pleads recognizable source identifiers, competing services, visible advertising uses, and a plausible mechanism for confusion, the motion to dismiss Counts I–III is denied without foreclosing fact-specific challenges after the claims' scope is clarified.

### 3. <u>Count IV: Massachusetts Chapter 93A</u>

Count IV requires more extended attention because the parties dispute not only whether Plaintiffs plead deceptive conduct but whether the alleged acts and transactions occurred "primarily and substantially" within Massachusetts. Mass. Gen. Laws ch. 93A, § 11. Section 11 expressly allocates the burden of proving that the conduct did not occur primarily and substantially in the Commonwealth to the party asserting that proposition. *Id.* The Massachusetts Supreme Judicial Court directs courts to consider the center of gravity of the circumstances underlying the claim, in a holistic, fact-intensive assessment rather than by mechanical tallying of isolated contacts. *Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472–73 (2003). The site of the alleged wrongdoing, its receipt and consequences, and the particular commercial relationship all may matter, *see id.* at 472, but no single geographic indicator is invariably dispositive.

Defendants principally rely on *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012), which affirmed rejection of a Chapter 93A claim where internet-based misconduct was not especially focused on Massachusetts and had direct effects on consumers throughout the country. *Fishman* is not displaced by § 11's allocation of the burden, and I cannot decline to apply it simply because geographic disputes are often fact-intensive. Where the complaint itself

affirmatively establishes that the material wrongdoing and impact were broadly national rather than principally Massachusetts-based, a pleading-stage dismissal may be appropriate. Defendants argue that this is such a complaint: Plaintiffs operate nationwide, offer services in all fifty states, and allege advertising on Google, Bing, and Yahoo!, platforms reaching consumers across the country. [Doc. No. 23 at 3–5; Doc. No. 29 at 1–4]. Those allegations are relevant and cannot be ignored.

Yet the pleaded nationwide scope of Plaintiffs' business and the nationwide reach of the advertising platforms do not necessarily establish the actual geographic targeting, creation, management, or effect of the particular challenged campaigns. A platform capable of displaying advertising nationally may also support differently targeted advertisements. The FAC alleges, on information and belief, that Insurify is headquartered in Massachusetts, controls Compare.com's allegedly infringing activities from Massachusetts, and that Defendants intentionally targeted consumers in Massachusetts. FAC ¶¶ 11–12, 123–125. It further alleges a series of communications concerning the allegedly continuing practices from Massachusetts after cease-and-desist letters. *Id.* ¶¶ 123–125. Not all these allegations carry equal weight: headquarters and registration alone do not establish the geographic center of gravity; the statutory phrase in paragraph 126 is a conclusion, not a factual substitute; and correspondence responding to complaints is not necessarily the underlying deceptive advertising. But the asserted Massachusetts direction and targeted consumer conduct, coupled with communications allegedly accompanying renewed activity, provide some claim-specific connections that are not exhausted by Defendants' description of the parties' national markets.

I do not infer, merely because Plaintiffs conduct some business in Massachusetts, that economic losses were incurred principally there. The FAC identifies both Plaintiffs' principal

offices in California. Nor do I find that the ads in fact targeted Massachusetts disproportionately or that decisions respecting every campaign occurred at Insurify's Cambridge offices. The complaint offers no geographic breakdown of impressions, clicks, customers, or diverted sales. The narrower question is whether the existing allegations foreclose the possibility that the claimed wrongful conduct had a primarily Massachusetts center of gravity as a matter of law. On this record, the national nature of the parties' services and advertising technology is not a concession equivalent to a factual account of where the challenged ads were devised, directed, displayed, or chiefly consequential.

*Fishman* remains a serious potential obstacle after factual development. If discovery establishes diffuse nationwide conduct and substantial effects outside Massachusetts with no principal focus in the Commonwealth, § 11 may bar the claim notwithstanding Insurify's headquarters. Conversely, evidence that the complained-of activities were substantially conceived, controlled, or targeted in Massachusetts could affect the statutory assessment. The statutory burden does not mean Defendants must introduce evidence to prevail on every Rule 12(b)(6) motion; allegations can sometimes defeat a claim on their face. It means that, given the particular FAC and permissible inferences, I will not resolve the disputed geographic center of gravity from the mere existence of nationwide marketing channels.

Defendants also originally contended that Count IV inadequately alleges unfair or deceptive conduct apart from infringement. The FAC does not simply recite a statutory violation: it asserts the misleading placement and presentation of competing advertisements, alleged confusion about source or sponsorship, diversion of consumers, and repeated resumption after assurances of cessation. FAC ¶¶ 40–58, 67–81, 123–127. The Chapter 93A count rests on those allegedly deceptive commercial practices, including their trademark-related aspects. I do not

hold that every trademark infringement necessarily creates an additional Chapter 93A violation, or that repeated cease-and-desist correspondence alone creates one. Rather, taken together, the asserted misleading advertising conduct suffices to identify the practice claimed to be unfair or deceptive, subject to proof and the statutory geographic limitation. Count IV therefore survives dismissal at this stage.

## III. RULE 12(E) AND RULE 12(F) MOTION

### A. More definite statement

Rule 12(e) permits a more definite statement where a pleading is so vague or ambiguous that the responding party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). It is not a means to obtain all evidentiary detail before discovery. Defendants contend the FAC leaves them unable to identify which source-identifying rights are actually asserted and that the uncertainty would affect defenses and discovery. [Doc. No. 25 at 1–4]. The problem is not uniform across the referenced marks.

ALLCAR presents a concrete internal contradiction. Paragraph 24 defines "Jerry Marks" by listing the registered JERRY mark and several JERRY-formative common-law marks, then separately lists ALLCAR. Paragraph 40 nonetheless includes ALLCAR among keywords allegedly containing the Jerry Marks, and paragraphs 103 and 118 name ALLCAR among uses or variations of the Jerry Marks. Those references leave it unclear whether ALLCAR is claimed as a separate infringed source identifier, an included member of the otherwise defined Jerry Marks, a confusing variation of those marks, or simply evidence of alleged advertising practices. That distinction matters because Counts II–IV incorporate the defined term, and Defendants must know which underlying mark and theory they are answering. The parties' briefs do not cleanly cure the contradiction in the operative pleading. A limited Rule 12(e) order is justified.

By contrast, the FAC describes DRIVESHIELD, GARAGEGUARD, and PRICEPROTECT as Plaintiffs' product-feature marks and does not identify corresponding Defendants' use in the operative infringement allegations. Plaintiffs' briefing treats them as contextual, not as separately infringed rights. A narrative reference to Plaintiffs' offerings is not itself so vague that Defendants cannot respond. The alleged visual similarity of Insurify's advertisements likewise may serve as context for source confusion and intent; the FAC does not clearly assert an independent trade-dress cause of action. Those matters can be admitted or denied in the ordinary course. Defendants have not shown that Rule 12(e) relief is necessary as to them.

Accordingly, within fourteen days of this Order, Plaintiffs shall file a more definite statement specifying whether ALLCAR is asserted as an independently infringed mark, is intended to fall within the defined "Jerry Marks," is alleged to be a confusing variation of a specific asserted mark, or appears only as factual context; and, if asserted, identifying the count or counts and the corresponding allegedly wrongful use. Plaintiffs need not plead their evidence, but must identify their theory clearly enough to permit a response. The motion is granted only to that extent and otherwise denied.

**B. <u>Motion to strike</u>**

Rule 12(f) authorizes striking redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Because striking allegations is a drastic remedy and the pleadings define rather than prove the case, courts ordinarily exercise that power sparingly, particularly absent concrete prejudice. *See Boreri v. Fiat, S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *Sheffield v. City of Boston*, 319 F.R.D. 52, 54 (D. Mass. 2016). Defendants seek to remove allegations concerning

the non-Jerry product marks, the ads' "look and feel," and the legal statement in paragraph 5 concerning the evidentiary force of registration.

The product-feature allegations provide background on the breadth of Plaintiffs' business and the marks used in connection with its services, even if they are not independently asserted as infringed marks. The look-and-feel allegation, while not itself a separately pleaded trade-dress claim, bears a possible relationship to the asserted confusion and intent arising from the allegedly misleading ads. Discovery remains subject to relevance and proportionality constraints; retaining factual allegations in the complaint does not enlarge those rules or establish independent claims. Nor have Defendants shown sufficient prejudice to justify removing these contextual statements. Once ALLCAR is clarified, Defendants may seek appropriate relief if Plaintiffs attempt to rely on a theory outside the pleading's identified scope.

Paragraph 5 warrants a separate observation but not striking. It describes the registration as prima facie evidence of "exclusive right, validity, ownership, and use." Section 1057(b) instead describes a certificate of registration as prima facie evidence of the validity of the registered mark and its registration, registrant ownership, and the registrant's exclusive right to use the registered mark in commerce for specified goods or services, subject to conditions and limitations. The statute does not say that registration conclusively or independently proves actual continuing use in every disputed setting. Paragraph 23 states the more precise statutory proposition. I will apply the statute, not an imprecise characterization in a pleading; Defendants retain all defenses supplied by applicable law. An incorrect legal assertion does not bind the Court, and on the present showing its continued appearance in the FAC is not the sort of concrete prejudice that requires an order striking text. The motion to strike paragraph 5 is therefore denied without endorsing its formulation.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 17], as supplemented [Doc. No. 23], is DENIED. The denial of the Chapter 93A geographic challenge is without prejudice to renewal on an appropriate factual record. Defendants' Motion for a More Definite Statement [Doc. No. 24] is GRANTED in part as to ALLCAR and otherwise DENIED. Within fourteen (14) days of this Order, Plaintiffs shall file the clarification described in Section III.A. Defendants' Motion to Strike [Doc. No. 24] is DENIED. Defendants shall respond to the operative pleading in accordance with Rule 12(a)(4), measured from service of the ordered more definite statement to the extent applicable.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge